## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF OKLAHOMA

TRUGREEN LIMITED PARTNERSHIP,              )
A Delaware limited partnership,            )
                                           )
        Plaintiff,                        )
                                           )
vs.                                        )  Case No. 20-CV-71-TCK-CDL
                                           )
OKLAHOMA LANDSCAPE, INC.,                  )
an Oklahoma corporation;                   )
LAWN GUARD AND PEST, LLC,                  )
an Oklahoma limited liability company;     )
RYAN SCHWEGMAN, an individual;             )
TREY FILLMORE, an individual;              )
JEFF HARDY, an individual;                 )
JESSE SKIPPER, an individual; and          )
JEREMY BORROR, an individual,              )
                                           )
        Defendants.                       )

## <u>OPINION AND ORDER</u>

Before the Court are the Partial Motion to Dismiss filed by the Defendants Oklahoma Landscape, Inc. and Lawn Guard and Pest, LLC ("Corporate Defendants") and the Partial Motion to Dismiss filed by Defendants Ryan Schwegman, Trey Fillmore, Jeff Hardy, Jesse Skipper and Jeremy Borror ("Individual Defendants"). Docs. 46-47. Plaintiff TruGreen Limited Partnership ("TruGreen") opposes both motions. Docs. 52-53.

In this lawsuit, TruGreen seeks to enforce noncompetition and nondisclosure agreements its former employees signed before leaving the company and forming two competing lawncare companies—the Corporate Defendants.

TruGreen's Complaint asserts claims for breach of contract against the Individual Defendants; violation of the Defend Trade Secrets Act, 18 U.S.C. §1836, *et seq*. and the Oklahoma Uniform Trade Secrets Act, 78 O.S. §§85, *et seq.* against all Defendants; tortious interference with

business relations against the Corporate Defendants; tortious interference with contract and inducement of breach of contract against the Corporate Defendants; and civil conspiracy against all Defendants.  TruGreen seeks injunctive relief, as well as actual, exemplary and punitive damages against all Defendants.

The Individual Defendants have moved to dismiss with prejudice TruGreen's claims for breach of the noncompetition/nonsolicitation agreements between LawnAmerica and the Individual Defendants. Doc. 47.  The Corporate Defendants, in turn, seek dismissal with prejudice of Counts Four and Five—tortious interference with business relationships and tortious interference with contract and inducement of breach of contract—to the extent those claims are based on the Individual Defendants' alleged violation of the noncompetition/nonsolicitation provisions.  Doc. 46.

## I.  Background

The Individual Defendants are former LawnAmerica employees who eventually quit after TruGreen arrived at their workplace on October 9, 2019, and announced that it had purchased LawnAmerica.  TruGreen also purports to have purchased non-competition/non-solicitation agreements between the Individual Defendants and LawnAmerica. Subsequently, the Individual Defendants left TruGreen and formed two separate lawncare companies—defendants Oklahoma Landscape, Inc. and Lawn Guard and Pest, LLC.

On February 20, 2020, TruGreen filed suit against Defendants, alleging claims for breach of contract, violation of the Defend Trade Secrets Act, 18 U.S.C. §1836, *et seq.* and the Oklahoma Uniform Trade Secrets Act, 78 O.S. § 85, *et seq.*; tortious interference with business relations; tortious interference with contract against the Corporate Defendants and civil conspiracy.  Doc. 2. TruGreen seeks, *inter alia*, injunctive relief, actual damages and exemplary and punitive damages.

*Id.* In its lawsuit, TruGreen seeks enforcement of three separate non-competition/non-solicitation agreements against the Individual Defendants and companies they formed after leaving LawnAmerica: (i) an early version of a LawnAmerica agreement signed by three of the Individual Defendants; (ii) a subsequent version of a LawnAmerica agreement signed by two of the Individual Defendants; and (iii) a TruGreen agreement signed by four of the Defendants.

## II. Applicable Law

Fed. R. Civ. P. 12(b)(6) allows the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he Rule 8 pleading standard does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Id.*

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The plaintiff bears the burden to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Id.* at 556. Allegations in a complaint must be sufficient to show that a plaintiff plausibly, (not just speculatively) has a claim for relief. *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)).

## III. Allegations of the Complaint

TrueGreen is a national lawncare company that provides residential and commercial customers across the United States with lawn, tree and shrub care, among other services. Doc. 2,

¶13.  On October 9, 2019, TruGreen purchased certain assets of Family Blankat, LLC d.b.a. LawnAmerica, ("LawnAmerica") pursuant to an asset purchase agreement ("APA"), including the books and records, customer lists, agreements, inventory, fixed assets, intellectual property and other assets related to LawnAmerica's lawn care service, lawn pest control services, vegetation control and related ancillary services, mosquito eradication services, outdoor pest control and/or tree and shrub care services ("LawnAmerica Assets").  Under the APA, TruGreen's purchase of the LawnAmerica Assets included LawnAmerica's confidential information, including the LawnAmerica customer lists, which the APA stated are confidential ("Confidential Information"). *Id.*, ¶16.  Prior to entering into the APA, LawnAmerica had their employees sign non-disclosure and non-complete agreements, which were also included in the LawnAmerica Assets.  *Id.*, ¶17. As employees of LawnAmerica, the Individual Defendants each signed an Agreement Not to Disclose or Complete ("Non-Disclosure Agreements").  *Id.*, ¶18, Exs. 1-2 thereto.

Exhibit 1 of the Non-Disclosure Agreements includes a section titled "Post-Employment Restrictions," which provides that "[u]pon termination of employment with Company for any reason and for two years thereafter, Employee shall not directly solicit the sale of goods, services, or a combination of goods and services from the established customers of Company."  *Id.*, ¶19 (citing Ex. 1, §2).

The Non-Disclosure Agreements in Exhibit 1 further provide that the "Employee shall not at any time (a) discuss or otherwise make Confidential Information available to any person or entity other than Company: (b) use or allow or aid others in the use of Confidential Information, or (c) except as authorized by Company in writing, disclose to others, use for his own benefit or otherwise appropriate, copy or otherwise reproduce, or make notes of any Confidential Information."  Ex. 1, §3.

"Confidential Information" is defined to include, *inter alia*, "customers, customer lists, customer purchase information and methods and amounts of billing customers."   Ex. 1, §3. Additionally, Exhibit 2 includes a provision that the Employee shall return all customer lists, and other confidential information to the Company upon the Employee's termination from the Company.  Ex. 1, §4.  Additionally, Ex. 2 of the Non-Disclosure Agreements states:

> Upon termination of his employment with Company, Employee shall: (a) refrain from directly or indirectly selling or providing or assisting in the sale or provision of residential and commercial lawn, tree and shrub care; periodic application of pest, weed and insect control; and additional related services including aeration, seeding, and Christmas light installation to or for those persons or entities with whom Employee had contact on behalf of Company (b) refrain from inducing, or attempting to induce, any Customer to cancel, discontinue, terminate or fail to renew any relationship with company, and (c) refrain from performing any act which might otherwise threaten the business relationship of Company with Customers.

Doc. 2-2, Ex. 2.

After TruGreen purchased the LawnAmerica Assets, previous LawnAmerica employees who transitioned to TruGreen's employment, including Individual Defendants Jeff Hardy, Trey Fillmore, Ryan Schwegman and Jesse Skipper, signed Confidentiality/Non-Compete Agreements ("Confidentiality Agreements").  Doc. 2, ¶27.   Like the Non-Disclosure Agreements, the Confidentiality Agreements also included confidentiality and non-solicitation clauses.  *Id.*, ¶28; Ex. 3, §§4, 5(b).

While employed by LawnAmerica and/or TruGreen, the Individual Defendants had access to confidential information, including customer lists.  *Id.*, ¶29.  Specifically, Jeremy Borror, as office manager of LawnAmerica, had access to all of the customer lists for the Tulsa, Oklahoma metro area.  *Id.*, ¶30.[1]

---

[1] Borror is not alleged to have transitioned to TruGreen.

In late January 2020, TruGreen learned that the Individual Defendants were working for Oklahoma Landscape and/or Lawn Guard, and at least one of the Individual Defendants was handing out flyers to TruGreen's customers and attempting to solicit their lawncare business.  *Id.*, ¶31.  The flyers make clear that the Individual Defendants have retained information regarding LawnAmerica's customers' past service history and pricing information, stating "I was your Route Manager at LawnAmerica.  I am now working for Oklahoma Landscape . . . I would love the opportunity to keep your business and treat your yard."  *Id.*, ¶32; Ex. 4.  The flyer attached as Ex. 4 to the Complaint indicates that Oklahoma Landscape and/or Lawn Guard is targeting former customers of LawnAmerica through customer information, including but not limited to customer names, contact information, service history and pricing history that was improperly retained by the Individual Defendants and provided to Oklahoma Landscape and Lawn Guard in violation of the Non-Disclosure Agreements.  *Id.*, ¶33.  Additionally, Defendant Jeff Hardy recently posted on Facebook that he has "sold 20k in 2 weeks" for his new company.  *Id.*, ¶34; Ex. 5.  Upon information and belief, Jeff Hardy has sold $20,000 in lawn care business in two weeks by using Tru-Green's Confidential Information and soliciting the former customers of LawnAmerica and TruGreen.  *Id.*, ¶35.  By soliciting the former customers of LawnAmerica and TrueGreen and using the Confidential Information of TruGreen, the Individual Defendants have materially breached their obligations under the Non-Disclosure and Confidentiality Agreements.  *Id.*, ¶36.

Upon information and belief, due to the Individual Defendants' positions with LawnAmerica and TruGreen, the Corporate Defendants had knowledge of the Individual Defendants' Non-Disclosure Agreements and Confidentiality Agreements and tortiously interfered with and induced breaches of the agreements. *Id.*, ¶37.

TruGreen has a substantial interest in preventing Defendants from using customer lists it purchased in the APA. *Id.*, ¶38. TruGreen has lost and is continuing to lose customers as a result of the Individual Defendants' breach of the Non-Disclosure and Confidentiality Agreements and unauthorized and unlawful use of TruGreen's customer lists and Confidential Information. *Id.*, ¶40. TruGreen has no adequate remedy at law other than to seek temporary and permanent injunctive relief. *Id.*, ¶40.

TruGreen asserts the following claims:

**Count One**—breach of contract against the Individual Defendants

**Count Two**—violation of the Defend Trade Secrets Act, 18 U.S.C. §1836, *et seq.*, against all Defendants

**Count Three**—violation of the Oklahoma Uniform Trade Secrets Act, 78 O.S. §§85, *et. seq.* against all Defendants

**Count Four**—Tortious Interference with Business Relationships against the Corporate Defendants

**Count Five**—Tortious Interference with Contract and Inducement of Breach of Contract Against the Corporate Defendants

**Count Six**—Civil Conspiracy against all Defendants

TruGreen seeks injunctive relief, actual and punitive damages, disgorgement of revenues and profits obtained by virtue of Defendants' alleged misappropriation of TruGreen's trade secrets and solicitation of customers using its confidential information; exemplary damages pursuant to 18 U.S.C. § 1836 and 78 O.S. §88; punitive damages; costs, expenses and attorney's fees; and pre- and post-judgment interest on all monies found to be due to TruGreen. *Id.*, at 15-17.

The Individual and Corporate Defendants, in their Motions to Dismiss, contend:

- The TruGreen Agreements are unenforceable because they violate Oklahoma law and public policy and are not susceptible to reformation.

- TruGreen cannot enforce the LawnAmerica Agreements because it is not a party to the agreements, nor do the agreements provide that a subsequent assignee, purchaser, or successor in interest may enforce the agreements.

- The second LawnAmerica Agreement is unenforceable because it violates Oklahoma law and public policy and is not capable of judicial modification.

- The TruGreen Agreement provides that to the extent any provision of a prior agreement conflicts with the TruGreen Agreement, it is unenforceable and the TruGreen Agreement controls; accordingly, even if TruGreen could enforce the LawnAmerica Agreements, the non-competition and non-solicitation provisions the LawnAmerica Agreements conflict with the TruGreen Agreement, and therefore the TruGreen provisions—which are unenforceable under Oklahoma law—control.

Docs. 46-47.

### IV. Provisions of the Non-Competition/Non-Solicitation Agreements

At issue in this lawsuit are three noncompetition/nonsolicitation agreements: "Agreements Not to Disclose or Compete" between LawnAmerica and individual defendants Borror, Schwegman and Fillmore (the "LawnAmerica 1 Agreements"); agreements between LawnAmerica and individual defendants Hardy and Skipper (the "LawnAmerica 2 Agreements"); and agreements between TruGreen and Schwegman, Fillmore, Hardy and Skipper (the "TruGreen Agreements").

The LawnAmerica 1 Agreements provide, in pertinent part:

- <u>Post-Employment Restrictions:</u>

  Upon termination of employment with Company for any reason and for two years thereafter, Employee shall not directly solicit the sale of goods, services, or a combination of goods and services from the established customers of Company. The LawnAmerica 1 Agreements are governed by Oklahoma law.

Docs. 2-1 and 2-2, ¶¶2, 5(d).

The LawnAmerica 2 Agreements provide:

- Upon termination of his employment with Company, Employee shall: (a) refrain from directly or indirectly selling or providing or assisting in the sale

8

or provision of residential and commercial lawn, tree and shrub care; periodic application of pest, weed and insect control; and additional related services including aeration, seeding, and Christmas light installation to or for those persons or entities with whom Employee had contact on behalf of Company (b) refrain from inducing, or attempting to induce, any Customer to cancel, discontinue, terminate or fail to renew any relationship with company, and (c) refrain from performing any act which might otherwise threaten the business relationship of Company with Customers.

\* \* \*

- During the Term, Employee agrees not to compete, directly or indirectly, with Company, with or without compensation, in any of the products, services or other activities produced, sold, performed or engaged in by Company at any time before the termination of Employee's employment within 2 years.

Doc. 2-2, ¶¶2-3.

- The LawnAmerica 2 Agreements' "Term" is for four years following termination.

*Id.*, ¶1.

- While the non-competition provision of the LawnAmerica 2 Agreement (Doc. 2-2, ¶3) references the "Term," the non-solicitation provision (Doc. 2-2, ¶2) does not, and thus appears to be for an indefinite period.

Doc. 2-2, ¶¶2-3.

- The LawnAmerica 2 Agreements are governed by Oklahoma law.

*Id.*, ¶10.

The TruGreen Agreements list 41 states in which the agreement is valid or within which it should be used.  Notably, Oklahoma is not included in the list.

The TruGreen Agreements provide, in pertinent part:

- "Non-Competition":

During the one (1) year period following termination of Employee's employment with TruGreen, Employee will not, within any county in which Employee was assigned duties during the last twelve (12) months of employment, directly or indirectly become interested in (as an individual,

9

> **partner, stockholder, director, officer, principal, agent, employee, trustee, lender of money or in any other capacity) any work or activity, or render services for a company,** that involves a product, process, service or development which is then competitive with a product, process, service or development which is regularly used, or planned to be used, in the operation of Tru-Green's business.

Doc. 2-3 at 3, ¶5(a)(ii) (emphasis added).

- "Non-solicitation":

> [F]or a period of one (1) year following the termination of such association or engagement with TruGreen . . . Employee will not . . . **directly or indirectly, on behalf of himself or for others, solicit, contact in any manner or sell any product to any TruGreen customer** with whom Employee had actual contact while employed by TruGreen **for the purpose of directly or indirectly providing any service or product competitive with any service or product which is provided at the time of such contact by TruGreen.**

*Id.*, ¶5(b) (emphasis added).

- "Non-Interference".

> Employee shall not directly or indirectly induce or encourage: . . . any TruGreen customer to modify or terminate any relationship, whether or not evidenced by a written contract, with TruGreen.

*Id.* at 3, ¶5(c)(ii).

- Severability.

> …The invalidity or unenforceability of any provision of this Agreement shall not affect, impair or render unenforceable any other provision hereof. It is intended that any provision herein that is subsequently held to be invalid or unenforceable as written be construed as valid and enforceable to the fullest extent possible.  If a court of competent jurisdiction finds that any restrictions in Sections 4 or 5 are unenforceable by reason of its geographic or business scope or duration, such provision shall be construed as if such scope or duration had been more narrowly drafted so as not to be invalid or unenforceable.

*Id.* ¶8.

- "Prior Agreements":

  …The parties agree, to the extent that any provision of this Agreement conflicts with any prior Employment Agreement, however titled, between TruGreen and Employee, the terms of this Agreement shall prevail. . .

*Id.* at 1, ¶1(b).

The TruGreen Agreements purport to be governed by Tennessee law.

*Id.* at 4, ¶11.

### V. Choice of Law

The parties dispute whether Oklahoma or Tennessee law governs interpretation of the TruGreen employment agreements. The Tenth Circuit has held that in diversity cases, "federal courts must look to the forum state's choice-of-law rules to determine the effect of a contractual choice-of-law clause." *MidAmerica Constr. Mgmt., Inc. v. Mastec N. Am., Inc.*, 436 F3d 1257, 1260 (10th Cir. 2006).

Under Oklahoma law, "a contract will be governed by the laws of the state where the contract was entered into *unless otherwise agreed and unless contrary to the law or public policy of the state where enforcement of the contract is sought.*" *Id.* at 1260 (emphasis added). In this respect, the Tenth Circuit has issued a "clear mandate that a choice-of-law clause is unenforceable if its application violates the law or public policy of Oklahoma as expressed in the state's constitution, statutes, or case law." *MidAmerica*, 436 F.3d at 1260.

Under Tennessee law, "if there is a legitimate business interest to be protected and the time and territorial limitations are reasonable, then non-compete agreements are enforceable." *Murfreesboro Med. Clinic, P.A. v. Udom*, 166 S.W.3d 674, 679 (Tenn. 2005).

In contrast, "Oklahoma law voids all restraints of trade, except those made pursuant to the sale of goodwill or dissolution of a partnership." *Southwest Stainless, L.P. v. Sappington*, No. 07-CV-334-CVE, 2008 WL 918706, at *5 (citing 15 O.S. § 217).

Because the agreements at issue involve non-competition provisions in conflict with Oklahoma law, the Court must apply Oklahoma law governing interpretation of the agreements.

## VI.  Analysis

### A.  Individual Defendants (Counts 1-3, 6, 7)

#### 1.  The TruGreen Agreements

##### a.  The TruGreen Agreements are Subject to Oklahoma Law

As previously noted, the TruGreen Agreements purport to be governed by Tennessee law. However, where the cause of action is based upon diversity of citizenship, the federal court must apply the forum state's choice of law rules. *Moore v. Subaru of America*, 891 F.2d 1445, 1448 (10th Cir. 1989); *Jones v. Bistate Bistro Associates, L.P.*, No. 00-CV-882, 2001 WL 965057 at *4. (N.D. Okla. Aug. 9, 2001). Oklahoma's choice of law rules require the Court to apply the law of the state (1) chosen by the parties, (2) where the contract was made or entered into, or (3) the place of performance if indicated in the contract. *Moore*, *supra*, at 1449 (internal citations omitted). However, Oklahoma will not apply the law of another state where the other state's law is "contrary to the law and public policy of Oklahoma." *Id.* (citing *Pate v. MFA Mutual Ins. Co.*, 649 P.2d 809, 812 (Okla. App. 1982)). Accordingly, the Court must determine whether Tennessee law is contrary to Oklahoma law and public policy.

##### b.  The TruGreen Agreements Violate Oklahoma Public Policy

"[T]he question of whether a covenant not to compete or non-competition provision is contrary to [Oklahoma's] public policy is a question of law for the Court." *Oliver v. Ominicare,*

12

*Inc.*, 103 P.3d 626, 628-629 (Okla. Civ. App. 2004). Oklahoma's public policy concerning non-compete and non-solicitation agreements is set out in 15 O.S. §§217 and 219A. *Scanline Medical, L.L.C. v. Brooks*, 259 P.3d 911, 913 (2011). Those statutes provide, in pertinent part:

> Every contract by which any one is restrained from exercising a lawful profession, trade or business of any kind, other than as provided by Sections 218 and 219 of this title, or otherwise than as provided by Section 2 of this act, is to that extent void.[2]

15 O.S. §217.

> A person who makes an agreement with an employer, whether in writing or verbally, not to compete with the employer after the employment relationship has been terminated, shall be permitted to engage in the same business as that conducted by the former employer or in a similar business as that conducted by the former employer *as long as the former employee does not directly solicit the sale of goods, services or a combination of goods and services from the established customers of the former employer.*

15 O.S. §219A (emphasis added).

> The TruGreen Agreements—in violation of 15 O.S. § 217—prohibit employees from:

> [D]irectly or indirectly becom[ing] interested in (as an individual partner, stockholder, director, officer, principal, agent, employee, trustee, lender of money or in any other capacity) any work activity, or render[ing] services for a company, that involves a product, process, service or development which is regularly used, or planned to be used, in the operation of TruGreen's business.

Doc. 2-3, p. 3, § 5(a)(ii). Thus, § 5(a)(ii) of the TruGreen Agreement is void and unenforceable under Oklahoma law.

> The TruGreen Agreements also provide that the employee may not:

> …directly *or indirectly*, on behalf of himself or for others, solicit, contact in any manner *or sell any product* to any TruGreen Customer with whom Employee had actual contact while employed by TruGreen for the purpose of directly or indirectly

---

[2] 15 O.S. § 218 provides an exception with respect to the sale of goodwill, and 15 O.S. § 219 provides an exception for agreements pertaining to dissolution of partnerships. 15 O.S. § 2 sets out the requisites of a contract, *i.e.*: 1. Parties capable of contracting; 2. Their consent; 3. A lawful object; and 4. Sufficient cause or consideration.

providing any service or product competitive with any service or product which is provided at the time of such contact by TruGreen.

*Id.*, p. 3, § 5(b) (emphasis added).  This provision conflicts with 15 O.S. § 219A, which states that a former employee shall be permitted to engage in the same business as that conducted by the former employer as long as he does not *directly* solicit the sale of goods and/or services from the *established* customers of the former employer.  Moreover, the term "contact in any manner" runs afoul of §219A because there are many ways in which Defendants could engage in contact without directly soliciting customers—for example, by advertising.  And even assuming a valid non-solicitation provision exists, customers have the freedom to do business with any lawn and garden service they desire, and the noncompete provision purports to restrict that right.

### c. The TruGreen Agreements are not Capable of Judicial Modification

Although the TruGreen Agreements contain a severability clause, Defendants argue the agreements are incapable of judicial modification.  The Oklahoma Supreme Court has  held  that "[j]udicial modification is justified if the contractual defect can be cured by imposition of reasonable limitations concerning the activities embraced, time, or geographical limitations." *Howard*, 273 P.2d at 29.

In *Howard*, though, the Supreme Court declined to engage in judicial modification, noting that "[t]o conform with the restrictions of 15 O.S. 2001 §219A, we would have to determine whether the phrase 'present customers' within the agreement conformed to the Legislature's term "established customer," thereby supplying a material term of the contract, . . . [and] to excise the portion of this subsection (k)(ii) relating to past customers and suppliers."  The Court found that "the breadth of the delineation required to bring the non-competition agreements into conformance and the necessity of adding at least one material term to the contract prevents judicial modification." *Id.*  It concluded that judicial modification was inappropriate because it "cannot be

14

accomplished without rewriting the agreement to cure multiple defects, leaving only a shell of the original agreement, and would require the addition of at least one material term." *Id.*

Likewise, in *Antry v. Acosta, Inc.*, 410 P.3d 1017, 1024 (Okla. Civ. App. 2018), the Oklahoma Court of Civil Appeals—citing *Howard*—held that a non-solicitation agreement prohibiting a former Acosta employee from recruiting or hiring Acosta employees and soliciting or selling to clients she represented while employed by Acosta violated 15 O.S. §219A because it prohibited "more than direct solicitation of *established* clients." (emphasis added).  The Court noted Antry had been a longtime employee of Acosta, and that the employment contract prohibited her from soliciting *any*  "Clients" she *ever* represented while employed by Acosta, and would prohibit her from "'selling, soliciting, or promoting the sale of'  clients of her current employer who were former clients of Acosta, even if they left Acosta years before Antry changed employers." *Id.*

In this case, the TruGreen agreements bar former employees from soliciting, contacting, or selling any product to "any TruGreen customer with whom Employee had actual contact while employed by TruGreen for the purpose of directly or indirectly providing any service or product competitive with any service or product which is provided at the time of such contact by TruGreen."  Doc. 2-3 at ¶5(b).  This language clearly violates 15 O.S. § 219A.  Additionally, the agreements forbid former employees from directly *or indirectly* inducing or encouraging "any TruGreen customer to modify or terminate any relationship, whether or not evidenced by a written contract with TruGreen."  *Id.* at ¶5(c).  Here, as in *Howard* and *Antry*, the  Court would have to rewrite the TruGreen agreements and supply material terms in order to rectify the violations.  The Court declines to do so.

### 2. The LawnAmerica Agreements

The LawnAmerica 1 Agreements state that they will be governed by Oklahoma law, and that "[u]pon termination of employment with the Company . . . and for two years thereafter, employee shall not directly solicit the sale of goods, services, or a combination of goods and services from the established customers of Company."  Doc. 2-1, ¶2.

The LawnAmerica 2 Agreements also provide that they will be governed by Oklahoma law, and contain a provision which prohibits employees from: (a)"directly or indirectly selling or providing or assisting in the sale or provision of residential and commercial lawn, tree and shrub care; periodic application of pest, weed and insect control; and additional related services including aeration, seeding, and Christmas light installation to or for those persons or entities with whom Employee had contact on behalf of the Company;" (b) "…inducing, or attempting to induce, any Customer to cancel, discontinue, terminate or fail to renew any relationship  with company;" and (c) "…perform[ing] any act which might otherwise threaten the business relationship of Company with Customers."  Doc. 2-2, ¶3.

### a.  Enforceability of TruGreen Agreements (Defendants Schwegman, Fillmore, Hardy and Skipper)

"In making choice of law determinations, a federal court sitting in diversity must apply the choice of law provision of the forum state in which it is sitting, .   .   . even when choice of law determinations involve the interpretation of contract provisions."  *Shearson Lehman Bros., Inc. v. M & L Investments*, 10 F.3d 1510, 1514 (10th Cir. 1993) (citations omitted).  Accordingly, in determining the enforceability of the noncompete agreements, the Court must look to the law of Oklahoma.

Under Oklahoma law, "a contract will be governed by the laws of the state where the contract was entered into *unless otherwise agreed and unless contrary to the law or public policy*

16

*of the state where enforcement of the contract is sought.*"  *MidAmerica Constr. Mgmt Inc. v. MasTech North America, Inc.*, 436 F.3d 1257, 1260 (10th Cir. 2006) (citing *Williams v. Shearson Lehman Bros., Inc.*, 917 P.2d 998, 1004 (Okla. Civ. App. 1997)) (emphasis in original).

The  TruGreen Agreements provide that they are to be governed by Tennessee law.  Doc. 2-3, ¶11.  The Tennessee Supreme Court has held that "[a]greements in restraint of trade, such as covenants restricting competition, are not invalid per se," and "[a]lthough disfavored by law, such agreements are valid and will be enforced, provided they are deemed reasonable under the particular circumstances." *Allright Auto Parks, Inc. v. Berry*, 409 S.W.2d 361, 363 (Tenn. 1966). With respect to the reasonableness of such agreements, the Tennessee court stated:

> There is no inflexible formula for deciding the ubiquitous question of reasonableness, insofar as noncompetitive covenants are concerned.  Each case must stand or fall on its own facts.  However, there are certain elements which should always be considered in ascertaining the reasonableness of such agreements. Among these are:  the consideration supporting the agreements, the threatened danger to the employer in the absence of such an agreement; the economic hardship imposed on the employee by such a covenant; and whether or not such a covenant should be inimical to public interest.
>
> \*   \*   \*
>
> It is generally agreed that, before a noncompetitive covenant will be upheld as reasonable and therefore enforceable, the time and territorial limits involved must be no greater than is necessary to protect the business interests of the employer.

*Id.*

In contrast, Oklahoma law provides that "[e]very contract by which any one is restrained from exercising a lawful profession, trade or business of any kind, otherwise than as provided by Sections 218 and 219 of . . . title [15, O.S.], or otherwise as provided by [15 O.S. §219A] is to that extent void."  15 O.S.  §217.  With respect to non-compete and non-solicitation agreements, Oklahoma law states:

> A. A person who makes an agreement with an employer, whether in writing or verbally, not to compete with the employer after the employment relationship has been terminated, shall be permitted to engage in the same business as that

conducted by the former employer or in a similar business as that conducted by the former employer *as long as the former employee does not directly solicit the sale of goods, services or a combination of goods and services from the established customers of the former employer.*

B.  Any provision in a contract between an employer and an employee in conflict with the provisions of this section shall be void and unenforceable.

15 O.S. §219A (emphasis added).

TruGreen's response focuses on the enforceability of the TruGreen Agreements under Tennessee law.  *See* Doc. 53 at 10-13.  However, the TruGreen Agreements are plainly violative of 15 Okla. Stat. §219A, which the Oklahoma Supreme Court has held "is the Legislature's pronouncement on Oklahoma's public policy regarding covenants not to compete."  *Howard v. Nitro-Lift Techs., L.L.C.*, 273 P.3d 20, 28 (Okla. 2011) (*reversed on other grounds by Nitro-Lift Techs., L.L.C. v. Howard,* 568 U.S. 17, 133 (2012)).  In *Howard*, the Oklahoma Supreme Court stated:

> The plain, clear, unmistakable, unambiguous, and unequivocal language of 15 O.S.2001 §219A prohibits employers from binding employees to agreements which bar their ability to find gainful employment in the same business or industry as that of the employer.  The only exception allowed by the statutory provision is that the employee may be barred from soliciting goods or services from the employer's **established customers.**

*Id.*

> Similarly, the Oklahoma Court of Civil Appeals—citing *Howard*—stated:

> [T]he Oklahoma Supreme Court has specifically instructed that '15 O.S. 2001 §219A is the Legislature's pronouncement on Oklahoma's public policy regarding covenants not to compete . . . .  Although reversed on grounds pertaining to who had the authority under an arbitration provision to decide the non-compete covenants' validity—grounds unrelated to the merits of the dispute—the Oklahoma Supreme Court's decision in *Howard* remains the best pronouncement of that Court's instruction on the proper analysis of such non-solicitation agreements like the one under review.

*Autry v. Acosta, Inc.*, 410 P.3d 1017, 1023 (Okla. Civ. App. 2018).  The court in *Autry* concluded that a non-solicitation agreement prohibiting a former Acosta employee from, *inter alia*, soliciting

18

current or former Acosta customers "exceed[ed] the permissible limitations of §219A because it would prohibit her from soliciting current *or former* clients of Acosta "even if they left Acosta years before Autry changed employers"  and "were past clients with whom Acosta did not have an ongoing relationship and those it could not reasonably anticipate continuing a business relationship in the future." (emphasis added).[3]

In *MidAmerica Constr. Mgmt.*, 436 F.3d at 1260, the Tenth Circuit held that in cases where subject matter jurisdiction is based on diversity of citizenship, "federal courts must look to the forum state's choice-of-law rules to determine the effect of a contractual choice-of-law clause." (citation omitted).  The court noted that "[u]nder the law of the forum state, in this case, Oklahoma, a contract will be governed by the laws of the state where the contract was entered into *unless otherwise contrary to the law or public policy of the state where enforcement of the contract is sought.*" (emphasis in original).   Thus, the Court must examine Oklahoma law pertaining to noncompete provisions.

In *Southwest Stainless, L.P. v. Sappington*, 2008 WL 918706 at *6 (N.D. Okla. April 1, 2008), this Court, in resolving a dispute over which state's law would govern resolution of a dispute over alleged breach of a noncompete agreement, declined to apply Florida law— notwithstanding the parties' contractual agreement that Florida law would govern the agreement—

---

[3]TruGreen suggests *Autry* should be disregarded because it is an intermediate state appellate court decision, and it urges the Court to follow the Fifth Circuit's reasoning in *Cardoni v. Prosperity Bank*, 805 F.3d 573 (5th Cir. 2015).  In *Cardoni*, the appellate court—purporting to interpret Oklahoma public policy on non-solicitation and non-compete provisions—ignored the Oklahoma Supreme Court's opinion in *Howard v. Nitrolift*, as well as this Court's opinion in *Southwest Stainless*, in holding that non-solicitation and non-compete provisions signed by Oklahoma defendants in Oklahoma were enforceable against the defendants. *Id.*  The Court declines to follow *Cardoni*,  because the decision has never been cited by an Oklahoma court, a federal court sitting in Oklahoma, or the Tenth Circuit.  Moreover, Oklahoma will not apply the law of another state, such as Tennessee, when the other state's law is "contrary to the law and public policy of Oklahoma." *Moore*, *supra*, at 1449.

because the noncompete agreement violated  15 O.S. § 218, which "plainly states that noncompete agreements may not restrict competition beyond 'a specified county and any county or counties contiguous thereto, or a specified city or town or any part thereof.'"

Here, the TruGreen contracts provide that Tennessee law will govern resolution of the dispute over alleged breach of the noncompete agreements.  However, because Tennessee law conflicts with Oklahoma law regarding noncompetition agreements, the Court must apply Oklahoma law in determining whether the agreements are enforceable.  *Southwest Stainless, supra.*

Under 15 O.S. § 219A, individual defendants Schwegman, Fillmore, Hardy and Skipper could lawfully be restrained from *directly* soliciting TruGreen's *established* customers.  But because the TruGreen employment contracts prohibit former employees  not only from direct, but also *indirect* solicitation of, contact with, or sales to TruGreen's customers, the contracts violate 15 O.S. §219A, and are therefore unenforceable.

TruGreen argues that even if its agreements violate Oklahoma public policy, the Court should conform them to Oklahoma law pursuant to Tennessee reformation rules.  However, having determined the TruGreen agreements violate Oklahoma public policy by enforcing them under Tennessee law, the Court must look to Oklahoma law to determine interpretation and application of the agreements, including modification.  *Oliver v. Omnicare, Inc.*, 103 P.3d 626, 629 (Okla. Civ. App. 2004).

In *Howard*, the Oklahoma Supreme Court considered a noncompetition agreement that prohibited former employees from accepting employment with any oil and gas entity located in the United States which generated five percent of its gross revenues from nitrogen generation; prevented employees from "'owning, managing, operating, joining, controlling or participating'

in a similar business; being a director, officer, representative, partner, or consultant in any business engaging in nitrogen generation; loaning money to a like enterprise; or selling or leasing equipment to any person or business which has any significant portion of its business in nitrogen generation, whether or not the equipment is related to that particular portion of the business." 273 P.3d at 28-29.   Noting that the noncompete contracts went "well beyond that bounds of what is allowable under § 219A," the court ruled the covenants were void and unenforceable.  *Id.* at 29. In so ruling, the court stated:

> The plain, clear, unmistakable, unambiguous and unequivocal language of 15 O.S. 2001 § 219A prohibits employers from binding employees to agreements which bar their ability to find gainful employment in the same business or industry as that of the employer.  The only exception allowed by the statutory provision is that the employee may be barred from soliciting goods or services from the employer's *established customers.*

*Id.* at 28.   Additionally, the court held that judicial modification was inappropriate because "the contractual provisions would have to be substantially excised, leaving only a shell of the original agreement, and would require the addition of at least one material term."  *Id.* at 30.

Subsequently, in *Autry*, the Oklahoma Court of Civil Appeals held that a non-solicitation agreement prohibiting a former employee from, *inter alia*,  recruiting or hiring employees of her former employer or soliciting or selling to clients she represented while employed, violated §219A because it prohibited more than the "direct solicitation of established customers."

In this case, the TruGreen "non-solicitation" provision violates 15 O.S. § 219A in a number of respects.  First, it prohibits not only direct, but also *indirect* solicitation of or contact with any TruGreen customer (for example, advertising its services to the general public).   Second—and similarly—the term "contact in any manner" violates the statute because there are numerous ways in which permissible contact with TruGreen customers could occur (for example, at a booth during a county or state fair trade exhibition).   Third, the prohibition against "sell[ing] any product to

TruGreen customers" directly violates Oklahoma's prohibition against non-competes. Even assuming a valid non-solicitation provision exists, Oklahoma law permits the former TruGreen employees to sell products to anyone who has not been unlawfully solicited, because customers have a right to make their own choices about who they do business with. Finally, barring solicitation of any customer "with whom the employee had actual contact while employed by TruGreen" is impermissibly expansive, and would bar the Individual Defendants from contacting customers with whom they had contact but who may not be "established customers" of TruGreen.

The TruGreen Agreements also provide that a former employee "shall not directly or indirectly induce or encourage . . . any TruGreen customer to modify or terminate any relationship, whether or not evidenced by a written contract, with TruGreen." Doc. 2-3 at ¶5(c). But this provision is also unenforceable because it includes *indirect* inducement and encouragement and is not limited to established customers.

TruGreen argues that even if the Court finds the employment agreements violate Oklahoma law, it should judicially modify and enforce them. In *Howard*, the Oklahoma Supreme Court acknowledged that the noncompete covenant at issue contained a severability provision, and that "[j]udicial modification is justified if the contractual defect can be cured by imposition of reasonable limitations concerning the activities embraced, time, or geographical limitations." 273 P.3d at 29. However, the court declined to modify the contract, concluding:

> Judicial modification of the covenant not to compete is inappropriate where, as here, the contractual provisions would have to be substantially excised, leaving only a shell of the original agreement, and would require the addition of at least one material term. . . . We will not reform a covenant not to compete so offensive that it would require us to supply material terms.

*Id.* at 29-30.

22

Moreover, while the TrueGreen Agreements contain a severability provision, they are not subject to judicial modification because 1) the Court would be required to substantially excise the offending agreement, striking the . . . offending language and 2)  the Court would have to either strike or alter material terms, such as defining "customers."

### 3. LawnAmerica Agreements

#### a. Assignability/Enforceability

The Complaint alleges that TruGreen purchased the LawnAmerica Agreements 1 and 2 as part of the APA.  Doc. 2, ¶¶15-16.[4]  The Individual Defendants, however, argue the LawnAmerica 1 and 2 nonsolicitation provisions are unenforceable because the contracts neither provide for assignment nor contain any definition of "Company" that includes assignees or successors in interest, or  any other language indicating the parties anticipated the language would apply to a future purchaser. Doc. 47.

The Individual Defendants concede that Oklahoma courts have not addressed this issue, but cite case law from other states holding that noncompetition agreements are not assignable.  *See Traffic Control Services, Inc. v. United Rentals Northwest, Inc.*, 87 P.2d 1054,1058 (Nev. 2004) ("noncompetition covenants are personal in nature and, therefore, unassignable as a matter of law, absent the employee's express consent.); *Sisco v. Empiregas, Inc. of Belle Mina*, 237 So.2d 463, 466-467 (Al. 1970) (holding that the contract with noncompetition agreement between a former employee and his former employer was a "personal contract," and not assignable by the former employer to company acquiring its assets); *SDL Enterprises, Inc. v. DeReamer*, 683 N.E.2d 1347, 1350 (Ind. Ct. App. 1997) (noting the, "[a]s a general rule, personal service contracts are not

---

[4] The APA is not attached to the Complaint.  However, for purposes of the pending motions, the Court assumes this allegation is true.

23

assignable," and stating that "a personal right cannot be assigned"); *Smith, Bell & Hauck, Inc. v. Cullins*, 183 A.2d 528,  532 (Vt. 1962) (holding that "[l]ike the contract for hiring, upon which it was given, the employee's restrictive covenant is confined to the employer with whom the undertaking was made."); *Corporate Exp. Office Products, Inc. v. Phillips*, 847 So.2d 406,412-13 (Fla. 2003) (holding that "when the sale of a company's assets includes a personal service contract that contains a noncompete agreement, the purchaser can enforce its terms only with the employee's consent to an assignment."); *Reynolds and Reynolds Co. v. Hardee*, 932 F. Supp.149, (E.D. Va. 1996) (citing *Smith*, *supra*, the court observed that the relationship between employer and employee was one of "mutual confidence, " and that:

> [k]nowing the character and personality of his master, the employee might be ready and willing to safeguard the trust which his employer had reposed in him by granting a restrictive covenant against leaving that employment.  His confidence in his employer might be such that he could scarcely anticipate any rupture between them.  As to that particular employer, if a break did occur, he might be willing to pledge that his fidelity would continue after the employment had ended, even at the cost of forsaking the vocation for which he was best suited.  This does not mean that he was willing to suffer this restraint for the benefit of a stranger to the original undertaking.

*Id.*, at 153-154.

TruGreen cites three Oklahoma cases in support of its argument that the LawnAmerica Agreements were assignable:  *Inergy Propane v. Lundy*, 219 P.3d 547 (Ok. Civ. App. 2009); *Farren v. Autoviable Servs., Inc.*, 50 P.2d 646 (Okla. 1973); and *Bayly, Martin & Fay, Inc. v. Pickard*, 780 P.2d 1168 (Okla. 1989).  None, however, are applicable to the situation at hand.

In *Inergy*, a former employer sued its former employee, Lundy, for violation of a non-solicitation and non-compete agreement the former employee signed when he sold his propane business to Beck and Root Fuel Company pursuant to an asset purchase agreement and went to work for the buyer.  The agreement explicitly provided that it was binding on the parties "and their

respective successors and assigns." *Id.* 550.  Subsequently, Beck and Root Fuel Company sold its business to Inergy Propane.  Lundy resigned from employment at Inergy in January 2005, started a new propane business, and solicited customers of Inergy.  When Inergy sued to enforce the non-compete agreement, Lundy argued the non-compete agreement was not assignable without his written consent.  The Oklahoma Court of Civil Appeals, citing 15 O.S. §154, held that because the agreement specifically provided it was binding on the parties "and their respective successors and assigns" and that the covenants were to be "for the benefit of, and . . . enforceable only by, the parties hereto . . .[and] their respective successors and assigns,"  concluded that "the language of the Non-Compete Agreement contemplates successors [Inergy] to the interest held by Beck & Root . . ." *Id.*  Here, in contrast, the LawnAmerica noncompetition agreements have no language making the agreements assignable. Additionally, unlike the situation in Inergy,  the individual defendants in this case were not owners of LawnAmerica, but rather employees who did not benefit from the sale.

In *Farren*, the Oklahoma Supreme Court addressed the question of whether the sale of a business encompassed the good will of the business within the meaning of 15 O.S. §218.  508 P.2d at 648.  The court answered that question in the affirmative.  *Id.*  The court also, however, considered whether a covenant not to compete executed prior to any transfer of good will from Farren Company to Autoviable was void under 15 O.S. § 217.  The court concluded that the execution of a covenant not to compete was a part of a comprehensive plan of corporate consolidation and merger contemplated by the parties, and therefore the covenant not to compete was a transfer of good will that was valid and enforceable pursuant to 15 O.S. § 218.

In *Bayley*, the Oklahoma Supreme Court refused to enforce an employment contract which barred a former employee from soliciting, accepting for service, or receiving any commissions,

fees or income attributable to "the sale of insurance business of any kind or character . . ." from clients of his former employer at any time within three years of the termination of is employment. The court found the provision to be unlawful because it would bar the defendant from selling insurance to parties who became clients during tenure with the company, but who had since ceased to do business with employer, and would deny him the right to accept work from any Bayley client that might contact him, unsolicited, for the purchase of insurance. *Id.* at 1174-75.

In this case, however, the Complaint is devoid of allegations that the LawnAmerica noncompetition agreements were executed in contemplation of a sale of LawnAmerica assets to TruGreen. Nor do the agreements themselves include any language permitting the assignment or sale of the agreements to a subsequent purchaser such as TruGreen. Accordingly, the Court rejects TruGreen's argument that the LawnAmerica noncompetition agreements were assignable to or may be enforced by TruGreen.

Finally, in *Bayley*, the Oklahoma Supreme Court addressed the question of whether a covenant not to compete that violated § 217 could be judicially modified. 780 P.2d at 1172. There, the Court examined an employment agreement that barred its former employee, Pickard, from soliciting, accepting or receiving commissions "or income attributable to the sale of, insurance business of any kind or character . . ." from any party who was a client of his former employer within three years of termination of his employment. *Id.* at 1173-74. The Court concluded that because the parties' agreement would require material judicial alteration and the provision of essential terms in order to come with the rule of reason, the Court of Appeals erred in modifying the contract. *Id.* at 1175.

In light of Oklahoma law governing noncompetition agreements, the Court concludes the agreements are not assignable without the consent of the defendant employees. Since none of the

Individual Defendants consented to assignment of the LawnAmerica contracts, they are not enforceable against the Individual Defendants.

### B. Corporate Defendants

Defendants Oklahoma Landscape, Inc. and Lawn Guard and Pest, LLC (collectively the "Corporate Defendants") move for dismissal of Counts Four and Five of the Complaint, which assert, respectively, claims for tortious interference with business relationships, tortious interference with contract, and inducement of breach of contract. Doc. 46.

The Corporate Defendants argue that, even if the LawnAmerica Agreements are enforceable against former LawnAmerica employees (1) TruGreen cannot enforce either of the LawnAmerica Agreements because they are not assignable; (2) the non-competition and non-solicitation provisions of the TruGreen Agreements displace the non-competition and non-solicitation provisions of the LawnAmerica 1 and LawnAmerica 2 Agreements and (3) the LawnAmerica2 Agreements are unenforceable under 15 O.S. § 219A because they remain in effect for four years after the termination of the former employees' employment, and the non-solicitation provision remains in effect indefinitely.

#### 1.   Assignability of LawnAmerica Agreements

In its Complaint, TruGreen claims to have purchased the LawnAmerica Agreements as part of the APA.  Doc. 2, ¶¶ 15-16.[5]  The Corporate Defendants argue, however, that the agreements were not assignable under Oklahoma law.

The parties to the LawnAmerica Agreements are the Individual Defendants and LawnAmerica.  Docs. 2-1, 2-2.  TruGreen is not a party to either agreement, nor do the agreements

---

[5] TruGreen did not attach the APA to the Complaint.

contain any definition of "Company" that includes assignees, successors in interest, or any other language contemplating a future purchaser such as TruGreen. *Id.*

Oklahoma statutory law provides that "A contract must be interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful." 15 Okla. St. Ann. §152. Furthermore, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." 15 Okla. St. Ann. §154. Finally, "[i]n cases of uncertainty . . . the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." 15 Okla. St. Ann. § 170. In this case, that party is TruGreen's predecessor, LawnAmerica.

TruGreen cites three cases in support of its claim that the LawnAmerica contracts were assignable: *Inergy Propane v. Lundy*, 219 P.3d 547 (Okla. Ct. App. 2009); *Farren v. Autoviable Servs., Inc*. 508 P.2d 646 (Okla. 1973), and *Bayly, Martin & Fay, Inc. v. Pickard*, 780 P.2d 1168 (Okla. 1989). None, however, support TruGreen's claim of assignability.

In *Inergy*, the employment agreement specifically provided that it was "binding on the parties and their respective successors and assigns," and it was undisputed that Inergy was the successor to Lundy's employer, Beck and Root. 219 P.3d at 552. Here, in contrast, the LawnAmerica Agreements contain *no* provision for assignability. Additionally, the *Inergy* agreement stated that the covenants agreement was "binding on the parties 'and their respective successors and assigns.'" *Id.* Accordingly, the court –citing 15 O.S. § 154[6]—concluded that "the language of the Non-Compete Agreement contemplates successors to the interest held by Beck & Root. . . ." *Id.* However, no such language is included in the LawnAmerica contracts.

---

[6] 15 O.S. § 154 provides that "[t]he language of a contract is to govern its interpretation."

*Farren* involved a dispute over whether the sale of a business fell within the meaning of 15 O.S. § 218, which applies to non-compete provisions in contracts involving the sale of goodwill. 508 P.2d at 648.  In this case, there is no question about the sale of goodwill.  A secondary issue in the case was whether the successor company could enforce Farren's employment agreement. *Id.* at 648-649. The court held that Farren, who controlled Farren Company, consented to the sale of Farren Company's goodwill, including his employment agreement, to the successor company, because the employment agreement was executed as part of a "comprehensive plan of corporate consolidation and merger" which, *inter alia*, required Farren to execute an employment agreement. *Id.* at 649.  Here, in contrast, TruGreen is attempting to enforce non-compete provisions against former LawnAmerica employees who neither controlled LawnAmerica nor consented to the sale of their employment contracts.  Additionally, LawnAmerica is the only express or implied beneficiary of the LawnAmerica Agreements, and those agreements were not made in connection with a sale to TruGreen.

In *Bayly*, the plaintiff's right to enforce a noncompetition agreement was not at issue. Instead, the dispute was whether the agreement was an unlawful restraint of trade based on its expansive terms, and whether the Court of Civil Appeals erred in judicially modifying the agreement. 780 P.2d at 1170.  Here, in contrast, Defendants are challenging TruGreen's right to enforce the LawnAmerica noncompete agreements.

Finally, TruGreen's reliance on *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355 (10th Cir. 1990) is misplaced because (1) the court in *Equifax* was applying Kansas law—not Oklahoma law; and (2) the agreements in *Equifax* explicitly stated that "the duties and obligations of the [defendant] under this agreement shall inure [to] the benefit of the successors and assigns of [the original grantee]. " The LawnAmerica agreements contain no such language.

29

The Court concludes that because the LawnAmerica Agreements are devoid of any language permitting their assignability, either in whole or part, the agreements were not assignable.

### 2. Term of LawnAmerica Agreements

The term of the LawnAmerica2 Agreements is also unenforceable.  Under the agreements, the non-compete provision remains in effect for four years following the termination of the employee's employment, which—in its own right—is an unreasonable length of time. Worse, the non-solicitation provision remains in effect indefinitely—which is wholly impermissible.  *See Vanguard Envtl., Inc. v. Curler*, 190 P.3d 1158, 1169 (Okla. Civ. App. 977, 981) (finding a three-year period unreasonable).

### 3. Effect of TruGreen Agreements on Enforceability of LawnAmerica Agreements

The Corporate Defendants argue that even if the LawnAmerica 1 and LawnAmerica 2 Agreements are assignable, their non-competition and non-solicitation provisions are unenforceable because they violate 15 O.S. §219A, which prohibits only the *direct* solicitation of established customers.  The Court concurs.  Additionally, the prohibition against soliciting customers with whom the Defendants "had contact" far exceeds § 219A's limitation to only "established customers."

In both *Howard* and *Autry*, the Oklahoma Supreme Court and the Oklahoma Court of Civil Appeals, respectively, concluded that the noncompetition agreements at  issue were void and unenforceable pursuant to 15 O.S. § 219 and also declined to judicially modify the agreements because the contractual provisions would have to be substantially excised, leaving only a shell of the original agreement, and  because the Court would be required to supply at least one material term—"whether the phrase "present customers" within the agreement conformed to the Legislature's term "established customer." 273 P.2d at 29; 410 P.3d at 1024.  Here, too, judicial

modification is inappropriate because the Court would be required to supply a time period, which is clearly a material term.

### VII.  Conclusion

For the foregoing reasons, the Partial Motions to Dismiss filed by the Corporate Defendants and the Individual Defendants (Docs. 46-47) are granted.  TruGreen's claims against the Individual Defendants for breach of the LawnAmerica noncompetition/nonsolicitation agreements (Count 1) and against the Corporate Defendants for tortious interference with business relationships and tortious interference with contract and inducement of breach of contract (Counts 4 and 5) are hereby dismissed.

**ENTERED this 17th day of March, 2021.**

TERENCE C. KERN
United States District Judge